## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

<table>
<tr><td>

Gwendolyn H.,

              Plaintiff,

v.

Kilolo Kijakazi, Acting Commissioner of
Social Security,

              Defendant.

</td><td>

Civil No. 3:22-CV-00433-MPS




December 16, 2022

</td></tr>
</table>

### RECOMMENDED RULING ON PENDING MOTIONS

The Plaintiff, Gwendolyn H.,[1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Title II Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title XVI. (Compl., ECF No. 1.) She has moved the Court for an order reversing the Commissioner's decision and remanding for a new hearing. (ECF No. 14.) The Commissioner has moved for an order affirming the decision. (ECF No. 16.) The original presiding District Judge, the Honorable Stefan R. Underhill, referred the two motions to me, United States Magistrate Judge Thomas O. Farrish, for a recommended ruling. (ECF No. 11.) The case has since been reassigned to the Honorable Michael P. Shea. (ECF No. 18.)

The Plaintiff makes three principal arguments. (*See* discussion, Section III *infra.*) First, she contends that the Administrative Law Judge ("ALJ") improperly evaluated her mental impairments by relying on her inconsistent treatment without first considering her reasons for not

---

[1] Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

seeking treatment. (ECF No. 14-1, at 8-20.) Second and relatedly, she argues that the ALJ's residual functional capacity ("RFC") assessment did not adequately account for the mental limitations identified by the state agency psychological consultants. (*Id.* at 18-20, 24-26.) Third, she argues that the ALJ also improperly evaluated her physical impairments by not providing an adequate narrative discussion to support his conclusion that she could perform medium work. (*Id.* at 20-24.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire, 1,266-page administrative record, I conclude that the ALJ committed no reversible legal error and that his decisions were supported by substantial evidence. Accordingly, I recommend that the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 14) be **DENIED;** that the Commissioner's Motion to Affirm the Decision (ECF No. 16) be **GRANTED**; and that judgment enter in the Commissioner's favor.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On October 4, 2018, the Plaintiff filed an application for DIB under Title II and a claim for SSI benefits under Title XVI. (R. 16, 287-293, 294-301.) She claimed that she could not work because of posttraumatic stress disorder ("PTSD"), major depressive disorder, and lower back pain. (R. 131.) She alleged a disability onset date of October 10, 2012, which she later amended to June 23, 2017, at the supplemental hearing.[2] (R. 16.)

---

[2]    The relevant period under review for Plaintiff's DIB benefits runs from June 23, 2017, her amended alleged onset date, through the date of the ALJ's decision, October 29, 2020. 20 C.F.R. §§ 404.130, 404.315(a); *Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir. 1989). In contrast, with regard to her application for SSI benefits, the relevant period under review runs from October 4, 2018, the date she applied for benefits, through the date of the ALJ's decision, January 22, 2020. 20 C.F.R. §§ 416.330, 416.335; *see Frye v. Astrue,* 485 F. App'x. 484, 485 n.l (2d Cir. 2012) (summary order). The Plaintiff's date last insured for DIB is December 31, 2017. (R. 17.)

On January 3, 2019, the Social Security Administration ("SSA") found that the Plaintiff was "not disabled." (R. 142, 156.) The SSA again denied her claim on reconsideration on August 7, 2019. (R. 173, 187.) The Plaintiff then requested a hearing before an ALJ, and on April 30, 2020, Judge Ronald Thomas held a hearing. (R. 65-94.) The ALJ also heard testimony from a vocational expert ("VE"), Linda Stein. (R. 80-88.) The Plaintiff did not have representation at the first hearing. The ALJ also held a supplementary hearing on September 11, 2020, at which counsel appeared on the Plaintiff's behalf. (R. 35-64.)

On October 29, 2020, the ALJ issued an unfavorable decision. (R. 16-28.) As will be discussed below, ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims (*see* discussion, Section II *infra*), and ALJ Thomas's written decision followed that format. At Step One of his analysis, he found that the Plaintiff had not engaged in substantial gainful activity since her claimed disability onset date of June 23, 2017. (R. 19.) At Step Two, he found that the Plaintiff suffers from the severe impairments of major depressive disorder and degenerative disc disease. (*Id.*) He found the Plaintiff's obesity to be non-severe and found that her alleged PTSD was not a medically determinable impairment because she had not been diagnosed with that disorder by an acceptable medical source. (R. 19-20.) At Step Three, he concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart B, Appendix 1. (R. 19-20.) He then determined that, notwithstanding her impairments, the Plaintiff retained the residual functional capacity to perform medium work, but with the following limitations:

> The [Plaintiff] is limited to no climbing of ropes, scaffolds, or ladders. The [Plaintiff] should avoid hazards such as heights, vibration, dangerous machinery, including no driving. The [Plaintiff] is capable of simple, routine, repetitive work

that does not require teamwork or working closely with the public, and no public interaction, but is allowed occasional interaction with supervisors and coworkers.

(R. 21.)  At Step Four, the ALJ found that the Plaintiff is unable to perform her past relevant work as a typist or administrative clerk.  (R. 26.)  At Step Five, he relied on VE Stein's testimony to conclude that the Plaintiff could perform the jobs of laundry worker, food service worker, or kitchen helper.  (R. 27.)  In summary, he found that the Plaintiff had not been under a disability, as defined in the Social Security Act, from June 23, 2017, through October 29, 2020.  (R. 26, 28.)

On December 18, 2020, the Plaintiff requested that the Appeals Council review the ALJ's decision.  (R. 269-70.)  On January 24, 2022, the Council found "no reason under our rules to review the [ALJ']s decision" and, therefore, denied the Plaintiff's request for review.  (R. 1, 5.)  It added that if the Plaintiff wished to contest it, she could "ask for court review . . . by filing a civil action."  (R. 2.)

The Plaintiff then filed this action on March 23, 2022.  (Compl., ECF No. 1.)  The Commissioner answered the complaint by filing the administrative record on May 17, 2022.  (ECF No. 8; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").)  On August 17, 2022, the Plaintiff filed her Motion to Reverse the Decision of the Commissioner.  (ECF No. 14.)  On October 17, 2022, the Commissioner filed a motion for an order affirming her final decision.  (ECF No. 16.)  The plaintiff filed her reply brief on November 1, 2022.  (ECF No. 19.)  The parties' motions are therefore ripe for decision.

## II.    APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).    To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).    At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.*    At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.    *Id.*    At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of her "past relevant work." *Id*.    At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.*    The claimant bears the burden of proving her case at Steps One through Four. *Id.*    At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).    Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.    "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.   DISCUSSION

In this case, the Plaintiff claims that the ALJ's decision was legally erroneous or unsupported by substantial evidence in three principal respects. (*See generally* ECF No. 14-1.) First, she contends that the ALJ improperly evaluated her mental impairments by citing gaps in her treatment without first considering her reasons for not seeking treatment. (ECF No. 14-1, at

8-20.)  Second, she argues that the RFC did not adequately account for the limitations identified by the state agency psychological consultants.  (*Id.* at 18-20, 24-26.)  Third, she argues that the ALJ also improperly evaluated her physical impairments by not providing an adequate narrative discussion to support his conclusion that she could perform medium work.  (*Id.* at 20-24.)  I will address each argument in turn.

### A.    The ALJ Appropriately Evaluated the Plaintiff's Mental Impairments

#### i.    The ALJ did not Err in Failing to Consider Reasons for the Plaintiff's Inconsistent Treatment

The Plaintiff first argues that the ALJ "misunderstood [her] mental impairments" by failing to properly consider the reasons for her gaps in treatment, moderate findings of depression, and lack of medications.  (ECF No. 14-1, at 8.)  The Defendant responds that the ALJ's conclusions are supported by substantial evidence (ECF No. 16-1, at 7-10) and that the Plaintiff's claim to have rejected treatment because of the severity of her symptoms is unsupported by the record.  (*Id.* at 11-12.)

When analyzing the Plaintiff's symptoms, the ALJ found "that the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. 22.)  The ALJ then specified that "[a]s for the [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are unsupported by the objective medical evidence.  Regarding the [Plaintiff's] mental limitations, as of the amended alleged onset date, the residual functional capacity herein is supported by the [Plaintiff]s gaps in treatment, moderate findings of depression, lack of medications, and good cognition, focus, and concentration."  (*Id.*)  The ALJ did ask the

Plaintiff why she stopped taking her antidepressants during the hearing (R. 73), but he did not otherwise inquire about or explicitly address the reasons for her gaps in treatment in either the hearing or his written decision.  (*See* R. 22-25, 35-94.)

The Plaintiff's argument implicates the SSA's two-step process for evaluating a claimant's symptoms.  *See* 20 C.F.R. § 404.1529(c)(1); *see also* Soc. Sec. Ruling ("SSR") 16-3P, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017) ("We use a two-step process for evaluating an individual's symptoms.").  In the first step of the process, the ALJ must determine whether the "medical signs or laboratory findings" show that the claimant "has a medically determinable impairment . . . that could reasonably be expected to produce" her symptoms.  *Id.*  If so, the ALJ must then proceed to the second step, at which he evaluates "the intensity and persistence of [the claimant's] symptoms such as pain," and determines the extent to which those symptoms "limit his or her ability to perform work-related activities."  *Id.* at *4; *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

At the second step, "the ALJ must consider all of the available evidence, including objective medical evidence, from both medical and nonmedical sources."  *Gonzalez v. Berryhill*, No. 3:18-cv-00241 (SRU), 2020 WL 1452610, at *12 (D. Conn. Mar. 25, 2020).  The ALJ "may not reject a claimant's subjective opinion regarding the intensity and persistence" of her symptoms "solely because the available objective medical evidence does not substantiate . . . her statements."  *Id.* (quoting 20 C.F.R. § 416.929(c)(2)) (alteration omitted); *see also* 20 C.F.R. § 404.1529(c)(2).  If there is a conflict between the objective evidence and the claimant's testimony, "the ALJ 'must consider the other evidence and make a finding on the credibility of the individual's statements,'" and "should consider . . . (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage,

effectiveness, and side effects of any medication taken to alleviate pain; (5) treatment, other than medication, received for pain relief; (6) measures taken to relieve pain and other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." *Id.* (quoting *Graf v. Berryhill*, No. 3:18-cv-00093 (SRU), 2019 WL 1237105, at *8 (D. Conn. Mar. 18, 2019)) (internal quotation marks and alterations omitted).

SSR 16-3P provides additional guidance on the consideration of treatment in weighing a claimant's reported symptoms. *See* 2017 WL 5180304, at *9.  The ruling explains that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.*; *see also Femminella v. Comm'r of Soc. Sec.*, 524 F. Supp. 3d 20, 22 (E.D.N.Y. 2021) (explaining that an ALJ can properly rely on gaps in treatment to discredit a plaintiff's complaints).  It also advises, however, that "[w]e will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3P, 2016 WL 1119029, at *8.  The Second Circuit has thus held that while "an ALJ may find a plaintiff less credible if she failed to seek medical treatment," the ALJ is first "obligated to consider any explanation a plaintiff may have for such failure." *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016) (summary order).

Yet even if the ALJ fails in this duty, his error is not a reversible one if his credibility determination is otherwise supported by substantial evidence.  In *Snyder*, for example, the ALJ discounted the plaintiff's testimony without "consider[ing] any reasons why the plaintiff did not seek formal mental health treatment." 667 F. App'x at 320.  The district court nevertheless affirmed

9

his decision, and the Second Circuit affirmed the district court, because "the credibility determination was supported by other substantial record evidence." *Id.* Similarly, in *Marcos L. v. Saul* "the Appeals Council did not explicitly posit why Marcos failed to consistently pursue treatment." No. 3:19-cv-1921 (SRU), 2021 WL 1152961, at *20 (D. Conn. Mar. 26, 2021). The court nonetheless affirmed because the plaintiff had pointed to "no authority suggesting that such an oversight amounts to a reversible error where, as here, his symptoms were discredited on a number of other valid grounds." *Id.*; *accord Schneider v. Comm'r of Soc. Sec.*, No. 3:15-cv-590 (GTS/WBC), 2016 WL 5019059, at *7 (N.D.N.Y. Aug. 26, 2016), *report and recommendation adopted sub nom. Schneider v. Colvin*, No. 3:15-cv-0590, 2016 WL 4997090 (N.D.N.Y. Sept. 19, 2016) ("[A]ny error the ALJ may have committed in relying on Plaintiff's lack [of] treatment was harmless because there was substantial mental health evidence in the record to support the ALJ's determination."). As the Eleventh Circuit has explained – in a decision cited with approval in *Marcos L.* – a case may be remanded "[w]hen the ALJ *primarily if not exclusively* relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267-68 (11th Cir. 2015) (emphasis added). "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists." *Id.* at 1268.

Here, as in *Marcos L.*, the "decision to discredit [the plaintiff's] symptoms was not primarily, and certainly not exclusively, based on any lapses in treatment." *Marcos L.*, 2016 WL 1152961, at *20. To the contrary, the ALJ emphasized the inconsistency between the Plaintiff's claims and the objective medical evidence. The Plaintiff testified that she cannot work because of PTSD from workplace bullying and her "irritability and just not wanting at this time to work with

people." (R. 72.) She clarified at the second hearing that she does want to work but feels that she cannot. (R. 40-41.) She further testified that she would not be able to hold full-time employment because of "my inability to take criticism and change in my workflow and if I'm challenged and criticized, I focus on that and I'm not able to have a consistent pace after that incident, any incident and if I feel that – if because of the tension that is everywhere, I'm going to have to deal with that too." (R. 44.) She further stated that she has no energy, and she cannot focus enough to read anymore. (R. 44-46.) But the record contained substantial evidence to discredit these claims.

The Plaintiff's medical records routinely demonstrate that she was assessed with only moderate depression. (R. 583, 587, 641, 659, 665, 678, 984, 996, 1008, 1022, 1046.) They also frequently document her as cooperative and engaging with good eye contact (R. 579, 585, 595, 597, 599, 639, 668, 1012, 1024, 1028, 1113, 1225); with better or "okay" mood (R. 579, 585, 587, 595, 597, 599, 638, 665, 1012, 1028, 1113); with congruent affect[3] (R. 579, 585, 587. 595, 597, 599, 639, 668, 1012, 1028, 1113, 1225); with linear and goal-directed thought processes; and with sufficient future orientation to discuss future appointments and plans to babysit her grandchildren. (R. 579, 585, 595, 597, 599, 639, 668, 1007, 1012, 1028, 1113.) Her memory, insight, and judgment were generally rated as fair to good. (R. 579, 587, 595, 597, 668, 1028, 1068, 1113.) One treatment provider wrote that the Plaintiff is intelligent, well-spoken, enjoys working on the computer, and can care for herself and babysit her grandchildren. (R. 581.) Another provider added that the Plaintiff described herself as hardworking and perceptive, and that she would bring time management and organizational skills to a working environment. (R. 938.)

---

[3]    "Congruent affect means 'a person's emotions are appropriate for the situation.'" *Marion v. Saul*, No. 19-cv-76 (LRR), 2020 WL 2482124, at *7 (N.D. Iowa Apr. 21, 2020*), report and recommendation adopted sub nom. Marion v. Comm'r of Soc. Sec.*, No. 19-cv-76 (LRR), 2020 WL 2475579 (N.D. Iowa May 13, 2020).

There are also numerous notations throughout the Plaintiff's medical records demonstrating that her providers thought that she could work and that she became fixated on how her medical records might impact her claim for benefits.  (*See, e.g.,* R. 579 (considered cancelling appointment because she was angry with provider over notation in record regarding her ability to work); R. 580-81 (upset with provider for stating that she can work, and reported that she only attends appointments to have paperwork filled out for her claims) ("Patient has expressed many times not wanting to work."); R. 582 (patient continues to report frustrations with not wanting to work); R. 585 (upset over providers' comments about ability to work); R. 595, 674 (did not want to see Dr. Greene because he would not give her a "diagnosis pertaining to working"); R. 598 ("She increasingly makes clear in the session that she doesn't want to work . . ."); R. 625 ("pt sees Dr. Boggs and Green but reports frustration because 'things aren't happening the way they should . . . notes aren't good enough.' Pt referring to SSDI application."); R. 639 ("reports not wanting to work"); R. 668 (upset about provider's comments that she could work); R. 938, 1004, 1066 ("The veteran stated 'I don't know where to start' and she does not want to work with people.  She reported wanting to secure a job where she is 'way in the back.' . . .  The veteran agreed that her struggles are more so with interacting with people, their personalities and behaviors, not the actual work environment."); R. 1000 ("The veteran confirmed that she does not have a fear of returning to the work environment or working around people, it's a 'preference.' . . .  The writer and veteran discussed at-home data entry employment and she agreed that if a position was [legitimate] she would be open to exploring that option.  She reported being good with computers."); R. 1002 ("she wants to find work that is personally meaningful to her, not just a job");  R. 1006 ("seems pleased that she is taking steps to leave the safety of her 'cocoon' and find interests (and work) in the world"); R. 1162 (instructing provider on exactly what to put in record); R. 1166-68 (explaining

that she wants her medical records to reflect a diagnosis of PTSD and wants new providers who will agree with the diagnosis); *but see* R. 1012 (noting "they're telling me I can work but I can't," but further down the same page "Veteran stated that she definitely wants to work in the back somewhere"); R. 1030 (feels that she cannot work).)

In short, even if the ALJ did not adequately discuss the reasons for the gaps in the Plaintiff's treatment, that would not be a reversible error because he otherwise had a substantial evidentiary foundation for discrediting her claims. While remand can be warranted where an ALJ "'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure," *Henry*, 802 F.3d at 1268, this ALJ appropriately relied on medical record evidence and activities of daily living. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (finding that failure to consider reasons for not pursuing treatment was harmless error where testimony was inconsistent with contemporaneous treatment notes); *Marcos L.*, 2021 WL 1152961, at *20 (holding that ALJ appropriately relied on "clinical observations and testing indicative of greater functional abilities" in addition to lapses in treatment).

The Plaintiff points to record evidence demonstrating severe depression symptoms and proposes alternative reasons for why she did not pursue treatment. (*See* ECF No. 14-1, at 9-14.) Merely citing contrary record evidence that supports her position, however, does not mean that the ALJ's conclusions were unsupported by substantial evidence. "It is not the function of this Court to re-weigh evidence or consider de novo whether [a claimant] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, No. 1:19-cv-01523 (EAW), 2021 WL 707744, at *3 (W.D.N.Y. Feb. 24, 2021). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020). Here,

I find that the ALJ's decision to discredit the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms was supported by substantial evidence.

### ii.    The RFC Adequately Accounts for the Plaintiff's Mental Limitations

The Plaintiff argues throughout her brief that the RFC does not sufficiently address her limited concentration and focus, limitations in her ability to remain on task, or limitations in her ability to interact appropriately with coworkers, supervisors, and the public.  (ECF No. 14-1, at 15-16, 17-19, 24; ECF No. 19, at 3.)  The state agency consultants found that the Plaintiff was moderately limited in several areas and markedly limited in her ability to interact appropriately with the general public.  (R. 139-40, 153-54.)  The Plaintiff contends that the ALJ failed to account for these limitations in the RFC, and that "had the ALJ actually relied on these 'persuasive' opinions, he would have made" more restrictive RFC findings.  (ECF No. 14-1, at 18.)  I disagree.

As a threshold matter, it is well-established that the RFC does not need to perfectly correspond to any one medical opinion.  *See My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 104 (W.D.N.Y. 2021).  "Nor is the ALJ required to adopt each and every limitation identified merely because [he] gave weight to an opinion."  *Chasity A. v. Kijakazi*, No. 3:21-cv-551 (DJS), 2022 WL 1984148, at *3 (N.D.N.Y. June 6, 2022) (internal quotation marks omitted).  "To that end, [t]here is no absolute bar to crediting only portions of medical source opinions, . . . and an ALJ is free to rely on portions of several opinions to craft the RFC."  *Samantha T. v. Comm'r of Soc. Sec.*, No. 20-cv-201 (FPG), 2021 WL 3566597, at *3 (W.D.N.Y. Aug. 12, 2021) (internal citations and quotation marks omitted).

More importantly, in this case the RFC plainly did account for the limitations identified by the psychological consultants.  The Plaintiff argues that the ALJ should have included a limitation for off-task behavior in the RFC, but no doctor opined that she needed one.  To the contrary, both

consultants found that the Plaintiff would only be moderately limited in her ability to maintain attention and concentration for extended periods or carry out detailed instructions.  (R. 139, 153.)  Further, both consultants opined that she would be "able to sustain attention for simple, repetitive tasks for extended periods of two-hour segments over the course of a routine workday/workweek within acceptable attention, concentration, persistence and pace tolerances."  (*Id.*)  The ALJ accounted for these limitations by limiting the Plaintiff to simple, routine, repetitive work with no teamwork or interaction with the public and only occasional interaction with supervisors and coworkers.  A limitation to simple, routine, and repetitive tasks is generally sufficient to account for mild or moderate limitations in an ability to sustain concentration, persistence, or pace.  *See Poole v. Saul*, 462 F. Supp. 3d 137, 162 (D. Conn. 2020) (collecting cases).

Similarly, the RFC adequately accounted for the stress-related limitations observed by the consultants.  As the Plaintiff notes, Dr. Sells observed "decreased . . . stress tolerance."  (ECF No. 14-1, at 18.)  But the doctor added that this deficit "inhibit[ed] [the Plaintiff's] *complex decision-making abilities*."  (R. 170) (emphasis added).  While the doctor concluded that the Plaintiff was therefore "ill-suited for tasks that involve complex decision-making or supervisory responsibilities," she also opined that her "judgment is intact for safety and simple decisions."  (*Id.*)  Synthesizing these two conclusions, the doctor stated that the Plaintiff "may be best suited for an environment without high-pressure, strict pace or productivity demands," and that she could "perform simple, work-related tasks for 2-hour periods in an 8-hour workday."  (*Id.*)  The ALJ accounted for these limitations when he limited the Plaintiff to "simple, routine, repetitious work."  (R. 21); *see also Cory W. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1424 (DB), 2021 WL 5109663, at *7 (W.D.N.Y. Nov. 3, 2021) ("[L]imitations to simple, unskilled work account for moderate and even marked limitations in an ability to deal with stress."); *Herb v. Comm'r of Soc. Sec.*, 366 F.

Supp. 3d 441, 447 (W.D.N.Y. 2019) ("[A]n RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations."); *Thomas W. v. Comm'r of Soc. Sec.*, No. 20-cv-1010 (MWP), 2021 WL 3513840, at *4 (W.D.N.Y. Aug. 10, 2021) (collecting cases).

The RFC also adequately accounted for the Plaintiff's limitations in dealing with others. Both consultants identified "marked" limitations in the Plaintiff's ability to "interact appropriately with the general public," and moderate limitations in her ability to accept instruction, respond appropriately to criticism, and get along with coworkers. (R. 139, 170.) With respect to the public, the ALJ adequately allowed for the Plaintiff's marked limitation by limiting her to jobs with "no public interaction." (R. 21); *see Davis v. Comm'r of Soc. Sec.*, No. 17-cv-6804 (MWP), 2019 WL 1870814, at *4 (W.D.N.Y. Apr. 26, 2019) (concluding that a limitation to "short, simple interactions with . . . the public" was sufficient to address even a marked limitation); *Richard B. v. Comm'r of Soc. Sec.*, No. 1:20-cv-00585 (MJR), 2021 WL 4316908, at *8 (W.D.N.Y. Sept. 23, 2021) ("Consistent with . . . marked limitations in interacting with others, the ALJ limited plaintiff to only occasional interaction with . . . the public."). And with respect to colleagues, the ALJ adequately accounted for the Plaintiff's moderate limitations by restricting her to only "occasional interaction with supervisors and coworkers." (R. 21); *see Reilly v. Colvin*, No. 1:13-cv-00785 (MAT), 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("[G]enerally a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning."); *Mitkowski v. Saul*, No. 3:18-cv-00425 (WWE), 2019 WL 3214258, at *8 (D. Conn. July 17, 2019) (holding that an RFC limiting plaintiff to "occasional direct interaction with coworkers" was sufficient where, as in this case, the state agency psychologist found that the plaintiff was moderately limited in getting along with coworkers but

not significantly limited in maintaining socially appropriate behavior); *Major v. Saul*, No. 3:19-cv-1500 (SALM), 2020 WL 5793468, at \*13 (D. Conn. Sept. 29, 2020) (upholding RFC determination that plaintiff could perform jobs that did "not require teamwork or working closely with the public; and could occasionally interact with coworkers, public, or supervisors" where plaintiff was moderately limited in his ability to interact with the public and respond to criticism from supervisors); *Molly C. v. Comm'r of Soc. Sec.*, No. 20-cv-1376 (WMS), 2022 WL 1679413, at \*5 (W.D.N.Y. May 26, 2022) (holding that even a marked interaction in interacting with supervisors can be accommodated by occasional contact); *Luz D. C. v. Saul*, No. 3:20-cv-500 (AVC), 2021 WL 6883826, at \*17 (D. Conn. Aug. 20, 2021) (holding that a limitation occasional interaction with coworkers accounted for the plaintiff's potential for insubordinate behavior).

"Ultimately, it is the Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." *Beaman v. Comm'r of Soc. Sec.*, No. 1:18-cv-01344 (EAW), 2020 WL 473618, at \*6 (W.D.N.Y. Jan. 28, 2020) (citing *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018)).   In this case, the Plaintiff has failed to do so.   I therefore conclude that the ALJ's RFC finding adequately reflected the limitations in concentration and social functioning found by the state agency consultants.

The Plaintiff also very briefly argues that the ALJ should have scheduled a psychological consultative examination.  (ECF No. 14-1, at 19-20.)  An ALJ of course has an "affirmative duty to develop the medical record" and address any deficiencies in the medical evidence.  *Crysler v. Astrue*, 563 F. Supp. 2d 418, 432 (N.D.N.Y. 2008).  Yet "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).  Here, the consultant's opinions and the

medical records provided the ALJ with sufficient evidence to formulate an RFC. Indeed, the plaintiff does not even argue that the ALJ had insufficient opinion evidence, but rather that he misunderstood the opinions of the psychological consultants, which the Plaintiff calls "insightful" and "supported by the longitudinal record." (ECF No. 14-1, at 19-20.) The ALJ adequately discussed these opinions and accounted for the limitations that they identified.

**B.    The ALJ Appropriately Evaluated the Plaintiff's Physical Impairments**

Finally, the Plaintiff argues that the ALJ failed to include an adequate narrative conclusion assessing her physical impairments to support his opinion that she could perform medium work. (ECF No. 14-1, at 21-22; ECF No. 19, at 1.) Specifically, she claims "the ALJ did not explain how he arrived at the conclusion that [the Plaintiff] can perform medium exertion work, as opposed to light exertion, or heavy exertion." (ECF No. 14-1, at 21.) Here, as with her argument pertaining to the mental impairments, the Plaintiff summarizes evidence demonstrating that her physical impairments are limiting. (*Id.* at 22-23.) The Defendant responds that the ALJ appropriately considered the medical opinions of record, the Plaintiff's treatment history for her back problems, and articulated a sufficiently clear explanation for the RFC. (ECF No. 16-1, at 19-23.) I agree that the ALJ provided a sufficient narrative for a reviewing court to adequately review his decision.

Social Security Ruling 96-8P explains that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Soc. Sec. Ruling 96-8P, 1996 WL 374184, at *7. "An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities." *Arias v. Saul*, No. 18-cv-1296 (KAM), 2020 WL 1989277, at *8 (E.D.N.Y. Apr. 25, 2020). This determination "must be set forth with sufficient specificity to enable [the Court] to

decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728

F.2d 582, 587 (2d Cir.1984).  The law does not require, however, that the ALJ discuss every piece

of evidence, but rather requires that the court be able to "glean the rationale" of the ALJ's decision.

*Lowry v. Astrue*, 474 F. App'x 801, 805 (2d Cir. 2012).

For applications such as this one, which are filed on or after March 27, 2017, the SSA has

changed how ALJs are to assess medical opinions.  The new regulations provide that the agency

"will not defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's

own] medical sources."  20 C.F.R. § 416.920c(a).  According to these regulations, an ALJ must

"articulate . . . how persuasive [they] find all of the medical opinions and all of the prior

administrative medical findings in [the] case record" based on the following five factors:  (1)

supportability, (2) consistency, (3) relationship with the claimant, which focuses on the length of

the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent

of the treatment relationship, and the examining relationship, and (4) the specialization of the

source, with the most important factors being supportability and consistency.  20 C.F.R. §

416.920c(b).  The ALJ must explicitly articulate how he considered the supportability and

consistency of the medical opinion.  *See* 20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not

required to, explain how he considered the other factors.  *Id.*  When considering "supportability,"

ALJs are directed to look to "the objective medical evidence and supporting explanations presented

by a medical source . . . to support his or her medical opinion(s) . . . ."  20 C.F.R. § 416.920c(c)(1).

The "consistency" factor goes to the opinion's consistency with other evidence in the record.  "The

more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Contrary to the Plaintiff's assertion, the ALJ provided an adequate narrative discussion that is based on substantial evidence. The ALJ summarized the available medical record evidence pertinent to the Plaintiff's back pain, concluding that the "mild clinical and diagnostic findings support the reduced range of medium exertional work" and "the record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms"; summarized her daily activities, concluding that she "functions at a higher level physically" than alleged; and appropriately summarized the opinions of the medical consultants and the consultative examiners. (R. 23-25.) The ALJ appropriately relied on the consultative examiners' opinion that the Plaintiff had no limitation in her ability to sit, stand, walk, lift or carry, but ultimately imposed additional limitations based on her medical records. (R. 25.) Each of these conclusions is supported by the record. This evidence amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

As for the infrequent trips to the doctor and "mild clinical and diagnostic findings" on which the ALJ relied, the Plaintiff's medical records show a diagnosis of grade I spondylolisthesis[4] associated with degenerative disc disease in 2009 (R. 1255); lumbar facet syndrome with sciatic neuralgia[5] diagnosed by a chiropractor in 2012 (R. 1189); and a shoulder x-ray that did not reveal

---

[4]    "Spondylolisthesis is the forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum. . . . Grade one spondylolisthesis is the least severe level of spondylolisthesis." *Cortright v. Colvin*, No. 13-cv-5422 (FM), 2014 WL 4384110, at *3 (S.D.N.Y. Aug. 29, 2014) (internal citations and quotation marks omitted).

[5]    "On each side of the vertebrae there are tiny joints called facet joints. Facet joint syndrome is a condition in which arthritic change and inflammation occur, and the nerves to the facet joints convey severe and diffuse pain." *Hamm v. Colvin*, No. 16-cv-936 (DF), 2017 WL 1322203, at *6 (S.D.N.Y. Mar. 29, 2017) (internal quotation marks omitted). "'Sciatic neuralgia' is '[p]ain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic

any injuries. (R. 927.) As to the shoulder issue, the records show that the Plaintiff had fluid drained from her shoulder and received an injection to reduce her shoulder pain on October 10, 2017 (R. 1137, 1140), but treatment notes a few weeks later indicate her pain improved and she presented with functional range of motion and strength in her shoulders since the injection. (R. 955, 1129.) She was also able to complete a sixty-minute strength, flexibility, and conditioning class at the VA wellness clinic. (R. 1133-34.) Moreover, the Plaintiff never reported to the Defendant that her shoulder injury was a disabling impairment, nor has the Plaintiff challenged the ALJ's determination that it was not a severe impairment. (R. 131, 145.) There is likewise scant record evidence relevant to the Plaintiff's back conditions after the amended alleged onset date, and a searching review of the record confirms that the Plaintiff never sought treatment for these allegedly disabling back conditions after the amended alleged onset date. Thus, the ALJ's reliance on mild clinical findings and infrequent trips to the doctor is supported by substantial evidence.

The ALJ also relied on the Plaintiff's daily activities in the RFC determination. He noted that the Plaintiff was capable of playing with and caring for her two grandchildren, one five years old and the other twenty months. (R. 24, 1144, 1259.) He also noted that the Plaintiff is independent and can wash and dress herself, she can do the laundry, take the bus, grocery shop, and cook at home. (R. 24.) The ALJ concluded that "these self-described activities indicate the [Plaintiff] functions at a higher level physically and psychologically than alleged." (R. 24.)

As for the medical opinions, the medical consultants all found that the Plaintiff had no severe physical impairments based on their review of the medical record evidence available to them. (R. 136, 150-51, 166, 180.) The ALJ found their opinions partially persuasive but found

---

nerve dysfunction . . . but now known to usually be due to herniated lumbar disk compressing a nerve root . . . .'" *Ayer v. Astrue*, No. 2:11-cv-83, 2012 WL 381784, at *1 (D. Vt. Feb. 6, 2012) (citing Stedman's Medical Dictionary 1731 (28th ed. 2006).

that her back injury was severe based on the diagnoses of sciatic neuralgia and spondylolisthesis. (R. 25.)  He also relied on opinions from two consultative examiners.  The first consultative examiner found that the Plaintiff had a full range of motion and normal strength in all extremities, and that she had no tenderness over her spine and was able to fully flex her spine.  (R. 908.)  He concluded that she had no limitations in her ability to walk, stand, sit, lift, or carry.  (R. 909-10.) The ALJ found this opinion partially persuasive, again noting that the Plaintiff's diagnoses justified some limitations to her RFC.  (R. 25 ("The undersigned finds that the objective medical evidence supports the reduced range of medium exertional level work due to the [Plaintiff's] back x-ray that showed only grade I spondylolisthesis.").)  The ALJ thus limited the Plaintiff to no ropes, scaffolds, or ladders, and no hazards such as heights, vibration, dangerous machinery, or driving.  (R. 21.) The second examiner found some tenderness and spasm in her back, but concluded that "[she] has some low back pain but does not have significant impairment from that.  Her main problem appears to be anxiety, depression[.]"  (R. 914-15.)  The ALJ concluded that his "physical findings are persuasive and support the [RFC] herein, but his assessment of a significant impairment is not explained and therefore, less persuasive."  (R. 25.)  It is well-established that it is not error to impose more restrictions than called for by a medical opinion.  *See, e.g., Kiyantae N. v. Comm'r of Soc. Sec.*, No. 20-cv-6998 (FPG), 2022 WL 2758309, at *4 (W.D.N.Y. July 14, 2022).

The Plaintiff also briefly argues that had the ALJ imposed a light work RFC and applied the Medical Vocational Guidelines, or "Grids," a finding of disabled would have been required. (ECF No. 14-1, at 23; ECF No. 19, at 3.)  Having found no error in the ALJ's conclusion that the Plaintiff could perform medium work, there is no need to address this argument.

**IV.    CONCLUSION**

For the reasons stated above, I conclude that the ALJ's decision was supported by substantial evidence and free from legal error.  Therefore, I recommend that the Plaintiff's Motion for Order reversing or remanding the Commissioner's decision (ECF No. 14) be **DENIED**; that the Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 16) be **GRANTED**; and that judgment enter in favor of the Commissioner.

This is a recommended ruling by a Magistrate Judge.  *See* Fed. R. Civ. P. 72(b)(1).  Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to object within fourteen (14) days will preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; D. Conn. L. Civ. R. 72.2; *Impala v. United States Dept. of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); *Small v. Sec'y of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).


                                         */s/ Thomas O. Farrish*
                                   Hon. Thomas O. Farrish
                                   United States Magistrate Judge